IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| URBAN 2004 HOLDING COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>NATIONWIDE AFFORDABLE HOUSING FUND 27, LLC, *et al.*,<br><br>Defendants. | Case No. 20-cv-02243<br><br>Judge Mary M. Rowland |

### MEMORANDUM OPINION AND ORDER

Urban 2004 Holding Company brought this suit against Nationwide Affordable Housing Fund 27, LLC, SCDC, LLC, and Wentwood Capital Advisors. The parties have filed cross-motions for summary judgment. For the reasons stated below, Plaintiff's summary judgment motion [60] is granted in part and denied in part. Defendants' motion for summary judgment [53] is granted in part and denied in part.

### SUMMARY JUDGMENT STANDARD

Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The substantive law controls which facts are material. *Id*. After a "properly supported motion for summary judgment is made, the

adverse party must set forth specific facts showing that there is a genuine issue for trial." *Id*. at 250 (internal quotations omitted).

The Court "consider[s] all of the evidence in the record in the light most favorable to the non-moving party, and [] draw[s] all reasonable inferences from that evidence in favor of the party opposing summary judgment." *Skiba v. Ill. Cent. R.R. Co.*, 884 F.3d 708, 717 (7th Cir. 2018) (internal citation and quotations omitted). The Court "must refrain from making credibility determinations or weighing evidence." *Viamedia, Inc. v. Comcast Corp.*, 951 F.3d 429, 467 (7th Cir. 2020) (*citing Anderson*, 477 U.S. at 255). In ruling on summary judgment, the Court gives the non-moving party "the benefit of reasonable inferences from the evidence, but not speculative inferences in [its] favor." *White v. City of Chi.*, 829 F.3d 837, 841 (7th Cir. 2016) (internal citations omitted). "The controlling question is whether a reasonable trier of fact could find in favor of the non-moving party on the evidence submitted in support of and opposition to the motion for summary judgment." *Id*. (citation omitted).

When cross-motions for summary judgment are filed, the Court construes all facts and draws all reasonable inferences in favor of the party against whom the motion was filed. *Indianapolis Airport Auth. v. Travelers Prop. Cas. Co. of Am.*, 849 F.3d 355, 361 (7th Cir. 2017); *see also Chagoya v. City of Chicago,* 992 F.3d 607, 615 (7th Cir. 2021). The Court treats the motions separately. *Marcatante v. City of Chi.*, 657 F.3d 433, 439 (7th Cir. 2011). *See also Kreg Therapeutics, Inc. v. VitalGo, Inc.*, 919 F.3d

405, 416 (7th Cir. 2019) ("Each cross movant for summary judgment bears a respective burden to show no issue of material fact with respect to the claim.").

## BACKGROUND

**I. The Parties' Claims**

In its Amended Complaint (Dkt. 20), Plaintiff Urban 2004 Holding Company ("Urban 2004") alleges that in December 2019, it timely provided the Limited Partners with notice that it was exercising the Purchase Options and provided a copy of an appraisal report prepared by a nationally recognized appraiser. (Am. Compl. ¶73). Urban 2004 claims that Defendants, despite being contractually required under the Partnership Agreements to sell their Partnership interests to Urban 2004 upon its proper exercise of the Purchase Options, unjustifiably and in bad faith refused to honor Urban 2004's exercise of the options. *Id.* ¶91.

The Amended Complaint contains three counts: for breach of partnership agreements and duty of good faith and fair dealing against Nationwide 27 and SCDC (Count I); declaratory judgment against Nationwide 27 and SCDC (Count II); and tortious interference with partnership agreements against Wentwood (Count III). Nationwide 27 and SCDC responded with a counterclaim against Urban 2004. (Dkt. 37). In short, the counterclaim seeks a judgment declaring that Urban 2004 did not exercise the purchase option, that neither the NKF nor the Gill Appraisal is a mutually agreeable appraisal under Section 6.5H of the LPAs and Urban 2004 is not entitled to purchase the Limited Partners' interests in the Partnerships for the values set forth in either appraisal. *Id.* p. 12.

**II. The Agreements and Urban 2004's Exercise of the Option**

This case involves two partnership agreements. On or about November 9, 2004, Urban Florence I LP ("Florence I"), a limited partnership, was formed under Delaware law and its Agreement of Limited Partnership (the "Florence I LPA" (Dkt. 55-2)) was entered into on or about April 1, 2005 (DSOF (Dkt. 55) ¶ 1). On or about November 9, 2004, Urban Florence II LP ("Florence II"), a limited partnership, was formed under Delaware law and its Agreement of Limited Partnership (the "Florence II LPA" (Dkt. 55-3)) was entered into on or about April 1, 2005. *Id.* ¶ 2 (the agreements are referred to as "LPAs" or "Agreements").

Both Partnerships were formed for the purpose of acquiring, developing, owning, and operating multi-family housing complexes for persons of low to moderate income in accordance with the federal Low-Income Housing Tax Credit ("LIHTC") program. Under the terms of that program, the Partnerships are required to operate those properties in accordance with various requirements set forth in Internal Revenue Code Section 42, regulations promulgated thereunder, and state agency requirements for an initial period of 15 years, referred to as the "Initial Compliance Period" or the "Compliance Period." *Id.* ¶ 3. Each Partnership acquired, developed, owned, and operates affordable housing apartment complexes in Florence, Kentucky, known collectively as the Arcadia Park Apartments, and administered properties under the LIHTC program. The complex owned by Florence I contains 155 affordable housing apartment units and the Florence II complex contains 60 affordable housing apartment units. *Id.* ¶ 4.

4

Urban 2004 is the sole General Partner in Florence I and the Class B Limited Partner in Florence II. *Id.* ¶ 5. Nationwide 27 is the "Investment Limited Partner" (ILP) in both Partnerships (it acquired the Interests of the original ILP in the entities, Red Capital Tax Credit Fund XV, LLC). *Id.* ¶ 6. SCDC is the "Special Limited Partner" (SLP) in both Partnerships. *Id.* ¶ 7. Wentwood Capital is the Asset Manager for Nationwide 27 and SCDC in both Partnerships. *Id.* ¶ 8. In 2012, a Wentwood affiliate acquired ownership of the Limited Partner Interests. (PSOF (Dkt. 67) ¶ 79). Under the LPAs, the Limited Partners are entitled to essentially all of the Partnerships' tax credits, losses, and other tax benefits, such as depreciation deductions. *Id.* ¶ 60. Urban 2004 is/was responsible for negotiating and purchasing the Properties, securing bonds and financing, securing and delivering the Housing Credits, and overseeing the management and operation of the Partnerships and Properties in compliance with government rules and obligations. *Id.* ¶ 68.[1]

Both Partnership Agreements are governed by Delaware law, and both contain the same provision at Section 6.5H setting forth requirements for the potential disposition of the Interests of the Limited Partners or the apartment complexes. DSOF ¶ 9. Section 6.5H of the LPAs is at issue in this case, and states in relevant part:

> The General Partner shall have the right to purchase the Interests of the Limited Partners during the nine (9) month period immediately following the Compliance Period, at a price equal to fair market value of the Interests as established by a mutually agreeable appraisal.

---

[1] Defendants' response to Urban 2004's statements (Dkt. 75, ¶¶60, 68, 79) disputes their materiality. The Court overrules this objection and considers the undisputed information for background.

5

Florence I LPA; Florence II LPA, § 6.5H. (This first section of § 6.5H is referred to as the "Option"). The fifteen-year Compliance Period ended on December 31, 2019, under each LPA. DSOF ¶ 12.

On December 17, 2019, Urban 2004 sent a notice letter stating that it was exercising its Options under the LPAs to purchase the LP Interests during the second half of January 2020, and included was an appraisal by Newmark Knight Frank ("NKF Appraisal"). PSOF ¶¶ 84-85. The notice stated Urban 2004 was prepared to proceed to closing and to pay $403,125 for the Limited Partners' Interests in Florence I and $666,750 for the Limited Partners' Interests in Florence II (a total payment of $1,069,875). DSOF ¶15. Wentwood confirmed receipt of Urban 2004's letter, but raised concerns about the appraisal and suggested "jointly select[ing] the appraiser and then work[ing] together with the appraiser to ensure the valuation is done appropriately." PSOF ¶91.

On January 16, 2020, Tami Holtz of Wentwood emailed Mr. Greenbaum of Urban 2004 to "pass along some names [of appraisers] that [Wentwood] [was] familiar with," and the Gill Group was included on that list. *Id*. ¶¶95-96.[2] On April 30, 2020, the Gill Group provided final appraisals (the "Gill Appraisals") to Urban 2004, and on July 30, 2020, Urban 2004 provided the Gill Appraisals to Wentwood. *Id*. ¶99. Urban 2004's letter indicated that based on the Gill Appraisal, which was commissioned, directed, and conducted at Urban 2004's request, Urban 2004 "should be willing and

---

[2] Steven Greenbaum and Andrew Delman are two of Urban 2004's principals who participated in the original negotiations culminating in the LPAs. *Id*. ¶ 49.

6

able to purchase" the Limited Partners' Interests in both Partnerships for $766,100. DSOF ¶¶ 32-33.

## ANALYSIS

I. **Count I—Breach of Partnership Agreements and Duty of Good Faith and Fair Dealing**

Under Delaware law, the elements of a breach of contract claim are: "(1) a contractual obligation; (2) a breach of that obligation by the defendant; and (3) resulting damage to the plaintiffs."[3] *Greenstar, LLC v. Heller*, 814 F. Supp. 2d 444, 450 (D. Del. 2011) (citations omitted). "Summary judgment is the proper framework for enforcing unambiguous contracts because there is no need to resolve material disputes of fact." *HIFN, Inc. v. Intel Corp.*, 2007 WL 1309376, at *9 (Del. Ch. May 2, 2007). Urban 2004 argues that Defendants breached the LPAs by failing to allow it to purchase the Limited Partners' Interests once Urban 2004 exercised its option to do so; Defendants argue that Urban 2004 never had any purchase right and thus there was no breach.[4]

**A. Section 6.5H gives Urban 2004 an enforceable option right**

Urban 2004 argues that under the LPAs, it has an enforceable right to purchase the Interests and it exercised its option to do so. Defendants contend that Urban 2004

---

[3] The parties agree that Delaware law applies in this case. (Dkt. 54 at 4; Dkt. 66 at 18).

[4] Urban 2004 asserts its good faith and fair dealing claim "in the alternative." (Dkt. 66 at 30). Because the Court finds in favor of Urban 2004 on its breach of contract claim and because the covenant of good faith and fair dealing generally applies to circumstances in which there is a contractual gap or unanticipated development (*Dunlap v. State Farm Fire & Cas. Co.*, 878 A.2d 434, 441 (Del. 2005)) and is "a limited and extraordinary legal remedy" (*TWA Res. v. Complete Prod. Servs., Inc.*, 2013 WL 1304457, at *6 (Del. Super. Ct. Mar. 28, 2013)), the Court does not address this claim.

7

had no unilateral right to purchase the Interests of the Limited Partners and before Urban 2004 could claim any purchase right, the "mutually agreeable appraisal" was a condition that had to be satisfied. According to Defendants, the LPAs gave Urban 2004 the "right to enter into discussions". (Dkt. 72 at 3 ("enforceability of Section 6.5H is not contested" but the provision only "trigger[ed] [right to] discussions to try to reach a 'mutually agreeable appraisal.'")). In fact, although the LPAs allowed Urban 2004 until September 30, 2020 to purchase the Interests, on March 25, 2020 Wentwood sent a letter to Urban 2004 stating that the SLP was "exercis[ing] its right under Section 6.5H" to require that Urban offer the Properties for sale. (PSOF ¶¶ 103-04; Exh. 11 (Dkt. 63-11)).

"When interpreting a contract, the role of a court is to effectuate the parties' intent. In doing so, we are constrained by a combination of the parties' words and the plain meaning of those words where no special meaning is intended." *Lorillard Tobacco Co. v. Am. Legacy Found.*, 903 A.2d 728, 739 (Del. 2006). "Ambiguity does not exist where a court can determine the meaning of a contract without any other guide than a knowledge of the simple facts on which, from the nature of language in general, its meaning depends." *Id.* (citation omitted). "Delaware adheres to the 'objective' theory of contracts, i.e. a contract's construction should be that which would be understood by an objective, reasonable third party. We will read a contract as a whole and we will give each provision and term effect, so as not to render any part of the contract mere surplusage." *Osborn ex rel. Osborn v. Kemp*, 991 A.2d 1153, 1159 (Del. 2010) (cleaned up). *See also Leaf Invenergy Co. v. Invenergy Renewables LLC*,

210 A.3d 688, 696 (Del. 2019) ("[the court's] task is to fulfill the parties' shared expectations at the time they contracted…Contract terms themselves will be controlling when they establish the parties' common meaning so that a reasonable person in the position of either party would have no expectations inconsistent with the contract language.") (cleaned up).

The Court finds that Section 6.5H created an option right for Urban 2004 to purchase the Limited Partners' Interests—not an opportunity for a discussion. The Option contained two elements: Defendants' offer to agree to sell their *Interests* and their promise to keep that offer open until September 30, 2020. *See Walsh v. White House Post Prods., LLC*, 2020 WL 1492543, at *5-6 (Del. Ch. Mar. 25, 2020). Urban 2004 accepted that offer on December 17, 2019.

While at common law an offeror may revoke its offer before acceptance, "option contracts are an exception to this general rule." *Walsh,* 2020 WL 1492543 at *5. Urban 2004 accepted the Limited Partners' offer, thereby creating an enforceable contract. *See id.* at *6 ("Once the option is exercised and the offer accepted…the underlying agreement becomes a valid and enforceable bilateral contract.") (cleaned up). Defendants' response is two-fold: the first part of Section 6.5H (1) did not specify a price or mechanism to determine the price, and (2) was merely an "agreement to agree." The Court disagrees.

That the Option did not specify a price is not surprising given the nature of the Agreements and did not make the Option unenforceable. *See Seidensticker v. Gasparilla Inn, Inc.*, 2007 WL 1930428, at *5 (Del. Ch. June 19, 2007). Defendants

9

acknowledge that an option need not specify a price but argue that there was no agreement because Section 6.5H lacks a mechanism to decide the price. Not so. By the plain language of the Option, the price is to be set by a mutually agreeable appraisal establishing the fair market value of the Interests.

Defendants rely on *Walsh,* 2020 WL 1492543. Although decided on a motion to dismiss and not summary judgment, *Walsh* actually supports Urban 2004's position. The language in the buyout provision in *Walsh,* though not identical, is similar to language in Section 6.5H.[5] Unlike here, however, the buyout provision contained additional clauses stating that if the departing member did not agree with the results of the first appraisal, he or she could retain a second appraiser, and depending on the results on the second appraisal, the two appraisers might be required to jointly choose a third appraiser. *Id.* The court held that the plaintiff stated a breach of contract claim because the defendant company exercised the option but then withdrew from the price-fixing process. *Id.* at *6-8. Here, Urban 2004 exercised the Option, creating an enforceable contract, and proceeded to secure a mutually agreeable appraisal. Defendants do not cite any authority requiring the parties to specify a more detailed appraisal process or to include contingencies if one party objects to the appraiser's methodology. To the contrary, as Defendants acknowledge, "[t]he parties to a Delaware limited partnership have broad discretion when drafting their partnership agreement." *Parkcentral Glob., L.P. v. Brown Inv. Mgmt., L.P.*, 1 A.3d 291, 296 (Del.

---

[5] The buyout provision there states in part: "the purchase price of that Member's Units will be determined by a qualified appraiser. The appraiser will be instructed to determine the fair market value of the Member Units…" *Walsh,* 2020 WL 1492543 at *2.

10

2010). Indeed "[w]hen parties have ordered their affairs voluntarily through a binding contract, Delaware law is strongly inclined to respect their agreement." *Libeau v. Fox*, 880 A.2d 1049, 1056 (Del. Ch. 2005).

Next, Defendants' contention that Section 6.5H was an "agreement to agree" is not convincing. As discussed, Section 6.5H confers an option right on Urban 2004: "[t]he General Partner *shall* have the *right to purchase* the Interests of the Limited Partners during the nine (9) month period immediately following the Compliance Period…" §6.5H (emphasis added). The next phrase, after the comma, "at a price equal to…" sets forth the mechanism for determining the price; it does not impose a duty on Urban 2004 to do something *before* exercising its option. Urban 2004 effectively exercised the Option. Indeed the day after Urban 2004 sent its notice, on December 18, 2019, Wentwood's representative, Holtz, emailed her colleagues stating that Urban 2004 was "exercising [its] purchase option on the Florence I and II deals," and "the second paragraph of [Section 6.5H] deals with the process involved if the General Partner does not exercise their option so the first paragraph is really the main focus." (Exh. 16 (Dkt. 63-16), emphasis in original). Ms. Holtz further stated that Wentwood's models "need to be adjusted to address lack of control and marketability since the LPAs dictate that the asset to be valued is the LP Interest rather than the Property itself." *Id*.

Moreover, to argue that the parties only had an "agreement to agree", Defendants rely on *Centennial Partners LLC v. ORC Tax Credit Fund 10 LLC et al.*, No. 17-cv-6214 (Wis. Cir. Ct.) but the contract language there was different, requiring an

11

"appraisal of the applicable asset performed by an appraiser selected jointly by the managing members and the special limited member." (Exh. 31, Dkt. 63-31). The Option here does not require a jointly-selected appraiser.[6] Defendants also rely on cases that did not involve partnership agreements and instead involved construction contracts or leases.[7]

### B. "Fair market value of the Interests as established by a mutually agreeable appraisal"

Both parties maintain that Section 6.5H's plain language favors their position. The Court finds the Option to be unambiguous and agrees with Urban 2004 that it gave Urban 2004 an option to purchase the Limited Partners' *Interests* (not including property) at a price equal to the fair market value of the Interests. *See Comet Sys., Inc. Shareholders' Agent v. MIVA, Inc.*, 980 A.2d 1024, 1030 (Del. Ch. 2008) ("The determination of whether a contract is ambiguous is a question for the court to resolve as a matter of law.") (cleaned up). Article XI of the LPAs define "Interest" (a capitalized term in Section 6.5H) as "the entire interest of a Partner in the Partnership at any particular time, including the right of such Partner to any and all

---

[6] The *Centennial* agreement was also different because it did not contain a dispute resolution provision regarding the appraiser and was "silent about dispute resolution overall." (*Id.* at 47). The Agreements here contain a dispute resolution provision in Section 10.5.

[7] These cases involved agreements to construct a residence where the parties failed to agree on all the material terms of the construction contract. *Heritage Homes of De La Warr, Inc. v. Alexander*, 2005 WL 2173992 (Del. Ch. Sept. 1, 2005), aff'd, 900 A.2d 100 (Del. 2006); *Welsh v. Heritage Homes of Delawarr, Inc.*, 2008 WL 442549 (Del. Ch. Feb. 15, 2008). *Centreville Veterinary Hosp., Inc. v. Butler-Baird*, 2007 WL 1965538 (Del. Ch. July 6, 2007) involved a lease agreement that set the price of rent for the initial term and then stated that each succeeding term, the rent "shall be subject to adjustment by the mutual agreement of the parties." None of these cases address partnership agreements. Under Delaware law, courts give parties broad discretion to draft partnership agreements and respect their agreed-upon terms.

benefits to which a Partner may be entitled hereunder and the obligation of such Partner to comply with the terms of this Agreement." *Separately*, "Property" is defined in Article XI as:

> that certain parcel located in Florence, Kentucky, which real property is more fully described in Exhibit 1 attached hereto, together with (i) all buildings and other improvements constructed or to be constructed thereon and (ii) all furnishings, equipment, fixtures and personal property covered by the Mortgages, known or to be known as Florence Christian Homes Apartments.

Neither the Option nor the definition of "Interest" contain the term "Property" or otherwise reference real property, buildings or the mortgage. This is also in contrast to "Capital Transaction" which is defined in part as the "sale or other disposition of all or substantially all of the assets of the Partnership and any refinancing of any Mortgage …" PSOF ¶59.

Thus the Option is unambiguous that the price to be paid by Urban 2004 is the value of the Limited Partners' Interests and does not include a "Capital Transaction". This is bolstered by the fact that *if* the General Partner "fails to purchase the Interests" of the Limited Partners, the LPAs describe the mechanism for appraising the property and offering it for sale. Wentwood's own representative acknowledged that when the General Partner exercises the Option, the "LPAs dictate that the asset to be valued is the *LP Interest rather than the Property itself*."[8] (Exh. 16 (Dkt. 63-16, emphasis added).

---

[8] Despite this, "Defendants do not dispute that Wentwood Capital retained CBRE and Greystone to assist in valuing the Limited Partner interests by valuing the Properties, the Partnerships' sole assets and that the CBRE and Greystone reports speak for themselves." (Dkt. 75 ¶ 105).

13

Section 6.5H also states that the fair market value of the Interests is to be established by a "mutually agreeable appraisal." The Court does not agree with Defendants that this term was a condition precedent to Urban 2004 exercising its option. Other than providing a time period for Urban 2004 to exercise its Option, § 6.5H does not impose a duty on Urban 2004 to do something before exercising its option.

The Court finds that an objective, reasonable third party would understand "mutually agreeable appraisal", in the context of the entire Agreement and Section 6.5H, to mean an appraisal secured by Urban 2004 from a list of appraisers identified by Wentwood. Defendants argue that "mutually agreeable appraisal" meant that the parties were required to engage in "a negotiation and agreement on all terms of such 'a mutually agreeable appraisal', including arriving at an agreed appraiser, *methodology* and 'fair market value.'" (Dkt. 54 at 7) (emphasis added). Those terms are not in the Agreements. If Defendants desired a more specific or thorough process for selecting an appraiser, evaluating appraisals, or approving a specific methodology, they would have included that language. Indeed the parties *did* require a detailed process in the provision *immediately following* Urban 2004's Option, which addresses what happens only "*if* the General Partner fails to purchase the Interests of the Limited Partners..." § 6.5H (emphasis added). Under Delaware law, "[t]he presumption that the parties are bound by the language of the agreement they negotiated applies with even greater force when the parties are sophisticated entities

14

that have engaged in arms-length negotiations." *W. Willow-Bay Ct., LLC v. Robino-Bay Ct. Plaza, LLC,* 2007 WL 3317551, at *9 (Del. Ch. Nov. 2, 2007).[9]

As Defendants argue, Delaware courts "interpret contract terms according to their plain, ordinary meaning." *Alta Berkeley VI C.V. v. Omneon, Inc.,* 41 A.3d 381, 385 (Del. 2012). The Option does not state that the appraisal must be agreed or agreed-upon; only *agreeable*.[10] The second part of § 6.5H, in contrast to the Option, specifically defines (the capitalized term) "Fair Market Value" as the "fair market value *agreed upon* by the General Partners and Special Limited Partner, or, in the absence of such agreement, the average of the three determinations of the appraisers." § 6.5H (emphasis added). Moreover, Defendants do not dispute that Gill Group was an independent appraisal firm approved by the Kentucky Housing Corporation. And Wentwood concedes it contacted the Gill Group about valuing the LP Interests before receiving the Gill Appraisal from Urban 2004. (Dkt. 75, ¶ 96).

In addition, the LPAs contain a dispute resolution provision in Section 10.5 wherein the partners "irrevocably agree[] that any suit, action or other legal proceeding arising out of this Agreement or any of the transaction[s] contemplated hereby shall be brought in any of the following courts…" § 10.5. That is what Urban 2004 did here.

---

[9] *See also Busbice v. Nix*, 2020 WL 10786541, at *5 (S.D. Tex. Sept. 23, 2020) (applying Delaware law and granting plaintiff's motion for summary judgment on breach of contract claim where plaintiff showed he exercised his option to compel a stock buy-back, and declining defendant's invitation to add a new requirement to contract).

[10] Webster's Dictionary defines "agreeable" as "being in harmony" or "able to be accepted." Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/agreeable.

Defendants ask the Court to add new terms to Section 6.5H. The Court will not do so. *See Seidensticker,* 2007 WL 1930428, at *4 ("Delaware law will not create contract rights and obligations that were not part of the original bargain, especially, where, as here, the contract could easily have been drafted to expressly provide for them.") (cleaned up); *Lorillard Tobacco Co.*, 903 A.2d at 739 ("creating an ambiguity where none exists could, in effect, create a new contract with rights, liabilities and duties to which the parties had not assented.").[11]

Therefore Urban 2004 has shown that there is no genuine issue of material fact that Defendants failed to honor Urban 2004's exercise of its Option, thereby breaching the Agreements. Summary judgment is granted to Urban 2004 on its claim for breach of the Partnership Agreements.[12]

## II. Count III—Tortious Interference

Urban 2004 argues that Wentwood tortiously interfered with the LPAs. Under Delaware law, tortious interference with contract requires: "(1) a valid contract; (2) about which defendants knew; (3) an intentional act that is a significant factor in causing the breach of such contract; (4) without justification; (5) which causes injury."

---

[11] Defendants' reliance on Urban 2004's corporate representative's March 2021 deposition testimony stating that there was no mutually agreeable proposal (DSOF ¶ 43) is not material as the Court is not relying on extrinsic evidence to construe the parties' contract.

[12] Urban 2004 seeks specific performance as a remedy for Count I, and in Count II seeks a declaration that among other things, the Limited Partners "must promptly transfer their Partnership interests to Urban pursuant to the Purchase Options for consideration, if any, in accordance with the terms of the Partnership Agreements." (Am. Comp. ¶¶115, 126). As stated below these requests remain pending.

16

*Beard Rsch., Inc. v. Kates*, 8 A.3d 573, 605 (Del. Ch.), aff'd sub nom. *ASDI, Inc. v. Beard Rsch., Inc.*, 11 A.3d 749 (Del. 2010) (cleaned up). In *Bhole, Inc. v. Shore Invs., Inc.*, 67 A.3d 444, 453 (Del. 2013), a case cited by Urban 2004, the Court concluded that the companies could not be "held liable for tortious interference, because there is no evidence that they interfered with the Lease maliciously or in bad faith." *See also Shearin v. E.F. Hutton Grp., Inc.*, 652 A.2d 578, 591 (Del. Ch. 1994) (requiring plaintiff to plead and prove company sought maliciously or in bad faith to injure plaintiff).

Urban 2004's cited evidence does not demonstrate conduct rising to the level of malicious or bad faith conduct. Urban 2004 argues that Wentwood acted unreasonably and in a manner to further its own economic interests. But it does not cite authority that this is enough to find as a matter of law that Wentwood is liable for tortious interference. *See Est. of Moreland v. Dieter,* 395 F.3d 747, 759 (7th Cir. 2005) ("We will not scour a record to locate evidence supporting a party's legal argument."); *Shipley v. Chicago Bd. of Election Commissioners*, 947 F.3d 1056, 1063 (7th Cir. 2020) ("Arguments that are underdeveloped, cursory, and lack supporting authority are waived.").

Urban 2004 has failed to show that there is no genuine issue of fact that Wentwood is liable for tortious interference with contract. Considering Defendants' summary judgment motion, the Court finds there is no issue of material fact on this claim. The evidence, even viewed in Urban 2004's favor, does not demonstrate that Wentwood "sought maliciously or in bad faith to injure [Urban 2004]" *Bhole*, 67 A.3d at 453

17

("there can be no non-contractual liability of the affiliated corporation...unless the plaintiff pleads and proves that the affiliate sought not to achieve permissible financial goals but sought maliciously or in bad faith to injure plaintiff).

Wentwood is entitled to summary judgment on Count III. Wentwood is dismissed as a defendant.

### III. Limited Partners' Counterclaim

The Limited Partners' counterclaim seeks a declaration that any right Urban 2004 had under Section 6.5H has expired and that the Limited Partners are "entitled to all rights and relief arising under the terms of the LPAs resulting from the expiration of Urban's purchase rights." (Dkt. 37). For all the reasons already discussed, the Court does not agree and therefore Urban 2004 is entitled to judgment on this claim and the Limited Partners' counterclaim is dismissed.

### CONCLUSION

For the stated reasons, Plaintiff's summary judgment motion [60] is granted in part and denied in part. Summary judgment is granted to Urban 2004 on its claim for breach of the Partnership Agreements (Count I). Urban 2004's remedy requests for specific performance, declaratory judgment, and damages remain pending. Defendants' motion for summary judgment [53] is granted in part and denied in part. Summary judgment is granted to Wentwood on the tortious interference claim (Count III). Wentwood is dismissed as a defendant. The Limited Partners' counterclaim is dismissed.

E N T E R:

Dated: March 14, 2022

MARY M. ROWLAND
United States District Judge